**LAW OFFICES OF NEIL JON BLOOMFIELD**
Neil Jon Bloomfield, Esq. (State Bar No. 52235)
901 E Street, Suite 100
San Rafael, CA 94901
Telephone: 415-454-2294
Facsimile: 415-457-5348

Attorneys for Defendant
ULI ZANGPO

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MORRISON.<br>    Plaintiff,<br><br>vs.<br><br>ULI ZANGPO,<br>    Defendant.<br>_____ | No. CV 08 1945 EMC<br><br>**DECLARATION OF NEIL JON BLOOMFIELD IN SUPPORT OF MOTION TO STAY PROCEEDINGS AND DISCOVERY PENDING MANDATORY BINDING ARBITRATION**<br><br>Date: September 10, 2008<br>Time: 10:30 a.m.<br>Place: Courtroom C, 15th Floor |

I, Neil Jon Bloomfield, declare as follows:

1.  I am the attorney for Defendant Uli Zangpo.

2.  Attached hereto as Exhibit A is a true and correct copy of the Agreement of Understanding—Manzinita between the parties.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of June, 2008, at San Rafael, California.

/s/

_____
Neil Jon Bloomfield

1

DECLARATION OF NEIL JON BLOOMFIELD IN SUPPORT OF
MOTION TO STAY PROCEEDINGS PENDING MANDATORY BINDING ARBITRATION

**AGREEMENT OF UNDERSTANDING**
*Manzanita*

**THIS AGREEMENT OF UNDERSTANDING of Manzanita** (the "Agreement") is made and effective as of December 13, 2005, by and between Uli Zangpo ("Uli"), Jennifer Baker ("Jennifer"), Jim Sciaroni ("Jim") and Mark Morrison ("Mark") (collectively, the "Parties"), and is made with reference to the following facts:

**RECITALS**

A. Uli and Jennifer, husband and wife, own real property located in San Geronimo, California with assessor's parcel number 169-331-15 and are in control of real property with assessor's parcel number 169-262-07 and are in the process of creating 4 legal buildable parcels of real property;

B. Jim and Mark have financial capital, legal, business, management and real estate management skills; and

C. The Parties desire to support each other in the entitlement to 4 legal buildable parcels of real property so that each Party and Steven Finkbine and Sandra Simich ("Steven and Sandra") may acquire ownership of a parcel of real property for the development of a residence;

**AGREEMENT**

**NOW, THEREFORE,** in consideration of the above recitals and the covenants, terms, conditions and agreements herein contained, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties do hereby agree as follows:

1. **Purpose.** The Parties are memorializing their understanding of past conversations with respect to the Property. The intention of the Parties is to work together in creating four legal buildable parcels of real property so that Jennifer and Uli, Jim, Mark and Steven and Sandra each have one parcel to build a single family residential home along with other legal structures such as a garage, guest cottage and barn. Each person will end up with one lot attached to approximately 3.7 acres and several common acres made up of the difference between the total acreage of four lots minus the 22.71 acres of existing land and the Extra Lot (the "Commons"). The intention of the Parties is to work together to create useable community space with the Commons facilities and structures such as a barn, solar power, wind power, water wells, water storage, fruit orchard, garden and living pools. Once the 4 parcels have been properly deeded to the four parties referred to in this Agreement, all parties will meet and agree upon an organizational format for handling Commons issues.

2. **Property.** The subject of this Agreement is real property commonly identified as assessor's parcel number 169-331-15 and is 22.71 acres located in San

Geronimo, California and more particularly identified as Exhibit A (the "Property"). The location of the two parcels is tentatively set as drawn on exhibit "B" and is made a part of this Agreement, but Jennifer and Uli will work with Mark and Jim in creating other possible locations for the Lots, if Mark or Jim desire an alternative site and a suitable one is available.

3. **Extra Lot.** In addition to the three lots to be divided from the Property, an additional parcel of real property commonly identified as assessor's parcel number 169-262-07 is part of this Agreement (the "Extra Lot"). Jennifer and Uli have entered into a contract with the owner of this property, Steven and Sandra, and have control of the Extra Lot with the intention of making it one of the four lots.

4. **Extra Lot Strategy**. The Extra Lot will be given acreage from the Property in a lot line adjustment currently in process allowing for a home site above Manzanita Avenue with view and Southwest sun exposure. The Option Agreement will include the purchase of the Extra Lot post lot line adjustment and one of the three Lots from the Property. The total acreage of these two lots will be approximately 7.40 acres. For example, if the Extra Lot is .80 acres, the Lot from the Property will be approximately 6.60 acres. After homes are built on these properties, either Jim or Mark will make a lot line adjustment such that each of these two lots will be approximately 3.7 acres. Each of these two lots will be ascribed rights via easements to the Commons. All four parcel owners will work together to come to an agreement on mutually agreed upon uses and conditions of use relative to each other including the use of easements.

5. **Obligations of Uli and Jennifer.** Jennifer and Uli agree to do as follows:
   a. Maintain responsibility for the entitlement process of splitting the Property from one parcel into three legal parcels with three separate deeds. In addition to splitting the Property into three parcels, the Extra Lot will be given a portion of the Property to create a fourth legal parcel and these four parcels will be the subject of this Agreement;
   b. Maintain responsibility for the entitlement process of making a lot line adjustment by increasing the size of the Extra Lot by adding additional acreage from the Property;
   c. Maintain the Property free of liens and encumbrances with the exception of the Note and Trust Deed referred to in this Agreement;
   d. Maintain the December 2003 and April 8, 2005 landslides resulting in a settlement agreement with Marin Municipal Water District October 2005;
   e. Maintain any required payments of the Note;
   f. Give Jim and Mark and option to purchase real property attached as Exhibit B and is made a part of this Agreement;
   g. Give Jim and Mark a promissory note and trust deed attached as Exhibit C and is made a part of this Agreement; and
   h. Make a good faith effort to fulfill the intention of the Parties to this Agreement.

6. **Obligations of Jim and Mark.** Jim and Mark agree to do as follows:

    a. Lend Jennifer and Uli $725,000 per the promissory note secured by the trust deed referred to above;
    b. Pay Twenty Five Percent (25%) of the Property taxes per the Option to Purchase Agreement;
    c. Support Jennifer and Uli in whatever way possible using their unique skills in the entitlement process; and
    d. Make a good faith effort to fulfill the intention of the Parties to this Agreement.

7. **Indemnification.** Uli and Jennifer will indemnify and hold harmless Jim and Mark against, and in respect of, claims, losses, expenses, costs, obligations, and liabilities they may incur by reason of Uli or Jennifer's breach of or failure to perform any of its warranties, guaranties, commitments, or covenants in this Agreement, or by reason of any act or omission of them, or any of their successors or assigns that constitutes a breach or default under, or a failure to perform, any obligation, duty, or liability of any of Jim or Mark under this Agreement and with respect to the December 2003 and April 8, 2005 landslides and any further damage resulting therefrom, but only to the extent to which Buyer expressly assumes these obligations, duties, and liabilities under this Agreement.

8. **Right of Indemnification Party to Defend.** If a claim shall be made to which the foregoing indemnification provisions relate, the Party or Parties demanding indemnification shall promptly notify the Party or Parties from whom indemnification is demanded, and if such other Party or Parties object in writing within thirty (30) days after such notice is given, the Party or Parties demanding indemnification shall not pay such claim or effect a compromise thereof so long as such other Party or Parties thereafter in good faith contest the claim. The indemnifying Party or Parties shall have the right to assume, at their own expense, the entire control of any such contest and any compromise or settlement thereof, and the Party or Parties demanding indemnification shall cooperate fully to make available all pertinent information to the indemnifying Party or Parties. Any such contest shall take into account the continuing business interest of all parties to this Agreement. The Party or Parties demanding indemnification shall have the right to have their counsel advise and consult with the indemnifying Party or Parties and their counsel in such matter. If, after notice of such claim has been given, the Party or Parties from whom indemnification is demanded do not object to the payment of such claim within such period and do not undertake the contest thereof as above provided, or if such Party or Parties shall not pay such claim after compromise or judgment, the Party or Parities demanding indemnification may pay, compromise or contest the same, and the indemnifying Party or Parties shall, on demand, reimburse the Party or Parties demanding indemnification for their payment of, and reasonable expenses incurred in connection with, such claim.

9. **Exit Strategy.** In the event Jennifer and Uli are unable meet their obligations with respect to the lot line adjustments and creating four legal buildable

parcels with the intention of the Parties, Jennifer and Uli will honor their commitment under the Promissory Note.

10. **Agreement Voluntary and By Representation.** In executing this Agreement and all other documents or instruments required by this Agreement, the Parties have not acted under any misapprehension, confusion or doubt as to the effect thereof, and are acting freely and voluntarily and under no coercion or duress. Each Party has had the right to secure the services of counsel of its own choosing prior to the execution of this Agreement.

11. **Amendments.** The provisions of this Agreement may be amended only if approved by the Parties and all persons who are shareholders of record of the Company as of the time of the proposed amendment. Any amendment of this Agreement will be in writing, dated and executed by all of the Parties. If any conflict arises between the provisions of any amendment and the Agreement as previously amended, the most recent provisions will control.

12. **Compliance with Laws.** Each Party shall comply with the requirements of all applicable laws, ordinances and regulations of the United States or any state, country or other governmental entity. This section incorporates by reference all provisions required by such laws, orders, rules, regulations and ordinances. Each Party agrees to indemnify and hold any other Party harmless from and against any and all claims, actions or damages, including reasonable attorneys' fees, arising from or caused by any Party's failure to comply with the foregoing.

13. **Construction and Interpretation of Agreement.** This Agreement has been prepared jointly by the Parties who acknowledge that they are of equal bargaining strength and the same shall not be construed for or against any Party hereto. The language in all parts of this Agreement will be in all cases construed simply according to its fair meaning and not strictly for or against any Party. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Agreement are for convenience only and will not affect the construction or interpretation of any of the provisions herein.

14. **Cooperation.** Each Party agrees to cooperate in good faith with the other, and to execute and deliver such further instruments, and perform such other acts as may be reasonably necessary or appropriate to consummate and carry into effect the transaction contemplated by this Agreement.

15. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument.

16. **Covenants and Conditions.** All of the provisions of this Agreement shall be construed to be conditions as well as covenants as though the words specifically expressing or imparting covenants and conditions were used in each separate provision.

17. **Entire Agreement.** This Agreement contains the entire and complete understanding between the Parties concerning its subject matter and all

4

representations, agreements, arrangements and understandings between or among the Parties, whether oral or written, have been fully merged herein and are superseded hereby.

18. **Executed Copy.** Any fully executed photocopy or similar reproduction of this Agreement shall be deemed an original for all purposes.

19. **Force Majeure.** Neither Party shall be deemed to be default of or to have breached any provision of this Agreement, nor shall the Agreement terminate, solely as a result of any delay, failure in performance or interruption of service, resulting directly or indirectly from acts of God, acts of civil or military authorities, civil disturbances, wars, strikes or other labor disputes, fires, transportation contingencies, laws, regulations, acts or orders of any government, or agency or official thereof, other catastrophes or any similar occurrences beyond the Parties' reasonable control.

20. **Governing Law.** This Agreement shall be construed in accordance with, and governed by, the laws of the State of California. Not only contractual claims and disputes, but all claims and disputes arising out of or in connection with this Agreement shall be governed in accordance with, and by, the laws of the State of California.

21. **Notices.** All notices, requests, demands or other communication (collectively, "Notice") given to any Party pursuant to this Agreement will not be effective unless given in writing to the Parties at their respective addresses as set forth below. Notice will be deemed duly given when delivered personally or by telegram, telex or courier, or, if mailed, 48 hours after deposit in the United States mail, certified mail, postage prepaid. The addresses of the Parties for the purpose of providing Notice pursuant to this section may be changed from time to time by Notice to the other Party duly given in the foregoing manner.
Uli and Jennifer
PO Box 567
25 Morelos Ave.
Forest Knolls, CA 94933
(415) 488-4772
palixent@comcast.net
Mark Morrison
524 San Anselmo AVE, No. 224
San Anselmo, CA 94960
415-460-1056
mark@markmorrisonlaw.com
Jim Sciaroni
19 Savannah AVE
San Anselmo, CA 94960
(415) 457-2816
jsciaroni@sbcglobal.net
Steven Finkbine and Sandra Simich
29 Bolinas RD
Fairfax, CA 94930

415-454-6901
steven@alchemistlab.com

22. **References.** The recitals and all exhibits, attachments or other documents referenced in this Agreement are fully incorporated into this Agreement by reference. Unless expressly set forth otherwise herein, all references herein to a "day," "month" or "year" will be deemed to be a reference to a calendar day, month or year, as the case may be. Unless expressly set forth otherwise herein, all cross-references herein will refer to provisions within this Agreement, and will not be deemed to be references to the overall transaction or to any other agreement or document.

23. **Remedies.** All rights, remedies, undertakings, obligations, options, covenants, conditions and agreements contained in this Agreement will be cumulative and no one of them will be exclusive of any other.

24. **Severability.** Each provision of this Agreement is intended to be severable and if any term or provision herein is determined invalid or unenforceable for any reason, such illegality or invalidity will not affect the validity of the remainder of this Agreement and, wherever possible, intent will be given to the invalid or unenforceable provision.

25. **Successors.** This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective and permitted successors, assigns, heirs, executors, administrators, and personal representatives.

26. **Time of Essence.** Time is of the essence with respect to the performance of every provision of this Agreement.

27. **Dispute Resolution.** Each Party waives the right to trial by jury in any action or proceeding between each of the Parties, on one side, and the other Parties on the other, based upon, arising out of, or in any way relating to this Agreement. This Agreement will be interpreted in accordance with California law, including all matters of constructions, validity, performance and enforcement, without giving effect to any principles of conflict of laws. Any dispute or proceeding concerning this Agreement, or any and all claims and disputes arising out of or in connection with this Agreement will be resolved by binding arbitration to be held in Marin County, California. Any party may demand arbitration through written notice sent by certified mail to the other (an "Arbitration Demand"). Within 15 days after the date that the Arbitration Demand is first mailed, each of the parties will confer to select a mutually acceptable arbitrator from the Judicial Arbitration and Mediation Services ("JAMS"). If JAMS is unwilling or unable to provide an arbitrator, the parties will confer to select another arbitrator. If the parties cannot agree to a mutually acceptable member from the JAMS panel of retired judges, a list and resumes of available mediators with substantial experience in mediating claims of the type at issue between the Parties, numbering one more than there are Parties, will be sent to the Parties, each of whom will strike one name leaving the remaining name as the mediator. If ore than one name remains, or if one Party refuses to participate in the selection process, JAMS will appoint

an arbitrator and such appointment shall be binding on the Parties. The arbitrator and the arbitration will be governed by the following rules:
a. If JAMS is unable or unwilling to select an arbitrator, the Presiding Judge of the Marin County Superior Court shall select the arbitrator upon the request of either party, and such selection shall be binding on the parties;
b. The arbitrator so selected will schedule the arbitration hearing within 120 days after he or she is first selected;
c. The parties will not be permitted any written discovery or depositions of any kind;
d. The arbitrator will have authority to make a binding determination even if the parties do not appear at the arbitration and may also grant any remedy or relief that the arbitrator reasonably believes to be just or appropriate, provided that such remedy or relief is within the scope of this Agreement;
e. The arbitrator must relax the California Evidence Code and the rules of judicial procedure;
f. The arbitration shall be by a single neutral arbitrator;
g. Either party shall within 15 days of receipt of the notice of hearing have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call designating which witnesses will be called as expert witnesses and a list of documents it intends to introduce at the hearing provided that the demanding party provides such lists at the time of its demand. A copy of such demand and the demanding party's lists shall be served on the arbitrator;
h. Such lists shall be served personally or by registered or certified mail on the requesting party 15 days thereafter. Copies thereof shall be served on the arbitrator;
i. Listed documents shall be made available for inspection and copying at reasonable times prior to the hearing;
j. Time limits provided herein may be waived by mutual agreement of the parties if approved by the arbitrator;
k. The failure to list a witness or a document shall not bar the testimony of an unlisted witness or the introduction of an undesignated document at the hearing, provided that good cause for omission from the requirements of subparagraph (g) is shown, as determined by the arbitrator;
l. The authority of the arbitrator to administer and enforce this paragraph shall be as provided in subdivisions (b) to (e), inclusive, of Section 1283.05 of the Code of Civil Procedure;
m. The neutral arbitrator may adjourn the hearing from time to time as necessary. On request of a party to the arbitration for good cause, or upon his own determination, the neutral arbitrator may postpone the hearing to a time not later than the date fixed by the agreement for making the award, or to a later date if the parties to the arbitration consent thereto;
n. The neutral arbitrator shall preside at the hearing, shall rule on the admission and exclusion of evidence and on questions of hearing

procedure and shall exercise all powers relating to the conduct of the hearing; and

o. Testimony of witnesses shall be given under oath. All fees and expenses of the arbitration will be paid equally by the parties participating in the arbitration. At the conclusion of the arbitration, the arbitrator will award the prevailing party its costs and attorneys' fees, including all arbitration costs. If the arbitration award is not paid within 90 days after the arbitration is made, the prevailing party may convert the award into a judgment and execute upon that judgment. The prevailing party will also be entitled to all of its post judgment attorneys' fees and costs incurred in collecting the judgment.

_____  DATED: 12-15-05
JENNIFER H. BAKER

_____  DATED: 15 Dec 05
ULI ZANGPO

_____  DATED: 12-13-05
JIM SCIARONI

_____  DATED: 12-13-05
MARK MORRISON

ACKNOWLEDGED

_____  DATED: 12-15-05
STEVEN FINKBINE

_____  DATED: 12-15-05
SANDRA SIMICH

8

Exhibit A

ESCROW NO. 253331 DM

ALL THAT CERTAIN real property situate in the County of Marin, State of California, described below as follows:

Beginning at the Southerly corner of Lot 31, as shown upon that certain Map entitled "Map Number Six of San Geronimo, a Subdivision of a Portion of San Geronimo Rancho, Marin County, California", filed for record June 8, 1927 in Volume 5 of Maps, at Page 45, Marin County Records; thence Easterly 40 feet, more or less, to the most Westerly corner of Lot 3, as shown upon the last mentioned map; thence Southeasterly along the Northeasterly line of Manzanita Avenue to the Southeasterly corner of Lot 8, as shown on said map; thence Northeasterly along the Southeasterly line of Lot 8, North 46° 39' 30" East, 60.00 feet to the most Westerly corner of Lot 9; thence along the Southerly line of Lots 9, 10 and 11 of said map, South 42° 46' East 225.60 feet and South 61° 31' East 102.22 feet to the most Southerly corner of said Lot 11; thence along the Southeasterly line of Lot 11, North 38° 55' East 195 feet to the Southerly line of Juniper Avenue; thence Easterly along said Southerly line to the Northeasterly corner of Lot 20, as shown on said map; thence continuing along the Southerly line of Juniper Avenue, South 1° 25' East 122.20 feet; thence leaving the line of Juniper Avenue, South 1° 25' East 450.00 feet; thence South 56° 05' West 600.00 feet; thence North 37° 35' 56" West 1508 feet, more or less, to the Southwesterly extension of the Southeasterly line of said Lot 8; thence Northeasterly along said line 150 feet, more or less, to the Southerly line of said Manzanita Avenue; thence Northwesterly along said line to the point of beginning.

Excepting therefrom that certain parcel of land shown as Parcel 16 in the Deed from San Geronimo Valley Water Company, a corporation to The Marin Municipal Water District, a public corporation, recorded July 8, 1952 in Book 751 of Official Records at Page 421, Marin County Records, and more particularly described as follows:

Beginning at the most Westerly corner of Lot 17, as shown upon that certain Map entitled "Map Number Six of San Geronimo, a Subdivision of a Portion of San Geronimo Rancho, Marin County, California", filed for record June 8, 1927 in Volume 5 of Maps, at Page 45, Marin County Records; running thence North 36° 13 ½' East along the Northwesterly line of said lot, 61.89 feet; thence South 53° 46 ½' East crossing and subdividing the said Lot 17 for a distance of 110 feet to the Southeasterly line of the said Lot 17; thence South 36° 13 ½' West along the last mentioned line 61.89 feet to the most Southerly corner of the said Lot 17; thence North 53° 46 ½' East 110 feet to the point of beginning.

Further excepting that certain parcel of land described in the Deed from Lagunitas Development Company, a corporation to Marin Municipal Water District, a public corporation, recorded July 25, 1957 in Book 1130 of Official Records at Page 310, Marin County Records, and more particularly described as follows:

Beginning at the most Westerly corner of Lot 17, as shown upon that certain Map entitled "Map Number Six of San Geronimo, a Subdivision of a Portion of San Geronimo Rancho, Marin County, California", filed for record June 8, 1927 in Volume 5 of Maps, at Page 45, Marin County Records; running from said point of beginning along the Southerly line of said Lot 17, South 53° 46 ½' East 60.00 feet; thence leaving said Southerly line of Lot 17, South 36° 01 ½' West 40.00 feet, North 53° 46 ½' West 60.00 feet and North 36° 01 ½' East 40.00 feet to the point of beginning.



EXHIBIT A

