*Lead Counsel*
Matthew Kurilich, Bar Number 30172
17321 Irvine Boulevard, Suite 115
Tustin CA 92780
Tel (714) 734-3715
Fax (714) 734-3716
mattkurilich@yahoo.com

*Co-Counsel*
Mark Morrison, Bar Number 152561
220 Second ST, No. 30
Langley, WA 98260
Tel 360-221-0253
Fax 360-851-2010
mark@markmorrisonlaw.com

Attorneys for Plaintiff MARK MORRISON

Neil Jon Bloomfield, Esq. (State Bar No. 52235)
901 E Street, Suite 100
San Rafael, CA 94901
Telephone: 415-454-2294
Facsimile: 415-457-5348
njbloomfield@njblaw.com

Attorneys for Defendant
ULI ZANGPO

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK MORRISON.<br>　　Plaintiff,<br><br>　　vs.<br><br>ULI ZANGPO,<br>　　Defendant. | ) No. CV 08 1945 EMC<br>)<br>) **JOINT CASE MANAGEMENT**<br>) **STATEMENT**<br>)<br>) Date: July 23, 2008<br>) Time: 10:30 a.m.<br>) Place: Courtroom C, 15th Floor<br>)<br>) |

In accordance with Civil Local Rule 16-9, the parties to the above-entitled action jointly submit this Case Management Statement and Proposed Order. Except as otherwise stated herein, the parties are in agreement as to the provisions of this Order. The parties request that the Court adopt the non-disputed provisions of this Order as the Case Management Order in this case, and as to the disputed provisions of this Order, request that the Court determine which of the conflicting provisions suggested by each side should be included in the final Order.

**Jurisdiction and Service**

The parties jointly agree that all parties to the original complaint have been served and that no issues exist as to personal jurisdiction or venue. The parties dispute the Court's subject matter jurisdiction over this case as follows:

*Plaintiff*

Plaintiff asserts that he is a citizen of the State of Washington, and Defendant is citizen of the State of California.

*Defendant*

Defendant asserts the Court lacks subject matter jurisdiction. Defendant has filed a motion to dismiss contending jurisdiction does not exist as there is no diversity between the parties, both residents of California. The motion is presently set to be heard at the same time as the Initial Case Management Conference.

*Defendant further states*

Defendant Uli Zangpo is the sole defendant named in the Complaint. If the Court retains jurisdiction, Defendant will file an answer, counterclaim, and cross-claims involving cross-defendants whose last known addresses are within the Northern District of California. Again, if the Court retains jurisdiction, the counter-defendant and various additional cross-defendants will be served in the time prescribed by law, except if all the pleadings are in the arbitration itself, which is what the parties originally contemplated to keep litigation or disputes simple and informal.

**Factual description of the case**

*Plaintiff's Statement of Facts*

Essential Facts - Plaintiff owned a property at 30 Prospect Avenue, San Anselmo, California (the Property). Plaintiff acquired the Property in approximately December 2004 as part of a 1031 exchange. Plaintiff desired to build a single-family residence on the Property. Plaintiff submitted his initial construction plans for the Property and, on April 26, 2006, his building permit was issued. Defendant began providing building services to Plaintiff in May 2006. Plaintiff and Defendant entered into a written contract on June 21, 2006 (the Contract). Under the Contract, Plaintiff agreed to pay Defendant $325,000 in cash and materials. Under the Contract, Defendant agreed to build a single-family residence on the Property. Under the Contract, the Defendant agreed to build the alleged residence by October 15, 2006. Plaintiff and Defendant entered into a new contract on December 5, 2006 (Final Agreement). Under the Final Agreement, the budget for the building was increased to $375,000. Under the Final Agreement, the finish date was changed to May 1, 2007. Plaintiff performed his obligations to Defendant under the Final Agreement by paying money upon demand and at his direction to third parties. Defendant failed to finish building the house by May 1, 2007.

Background - Plaintiff and Defendant met in late 2005 when Defendant approached Plaintiff and Jim Sciaroni offering them each one of four lots in a piece of raw land known as Manzanita. Plaintiff, Defendant, Jim Sciaroni and Steven Finkbine agreed to work together in splitting a 20+ acre piece of property in Marin County, with Defendant as lead in the project, for the purpose of each person having a lot and building a home in a cooperative community setting. Defendant had and continues to maintain a long standing relationship with a well-known attorney and prior county supervisor, Gary Giacomini, in the development of Manzanita. Since retiring as supervisor. Giacomini now heads the Marin office of a San Francisco-based law firm and has served as a paid land-use consultant to a number of high-profile developers, including George Lucas' expansions in Nicasio. Defendant requested that Plaintiff draw up the legal agreement between all of the parties and, Plaintiff agreed and complied with Rule 3-300 by having Defendant and his wife sign a

disclosures. Plaintiff has not provided legal services for Defendant other than a one-time legal drafting of Manzanita documents. Moreover, Plaintiff has neither billed nor been paid for those or any services since that time. Plaintiff is a civil trial attorney focusing on consumer protection in the areas of class action, mass action and personal injury.

Defendant was concerned that deeding the Manzanita property into each of our names would hinder his ability to split the lot due to political and environmental concerns. As a result, Plaintiff gave Defendant a note with a down payment and deferred payments with the understanding that Defendant would be paid in full upon the sale of Prospect or earlier receipt of funds from other sources. In the interim and evidence of Defendants agreement, Plaintiff paid Defendant interest up until the time the Prospect agreement was entered into based upon the fact that the money due to Defendant under the Note was to be used as collateral for the Prospect Final Agreement. Incidentally, Plaintiff paid the remaining amount due on the Note down from $125,000 to $83,000 based upon requests from Defendant.

Once Plaintiff began constructing the subject Property, Defendant asked Plaintiff if he could work on the project as he needed money. Plaintiff had hired a licensed contractor, Paul Warren, to act as the general contractor on the job. Defendant and Paul Warren began having emotional conflicts to the point of threatening to physically abuse the other. Defendant convinced Plaintiff to fire Paul Warren and hire Defendant as the general contractor, which Plaintiff politely said no. Plaintiff brought several longtime friends from Southern California and Oregon to support him in the building of the house. After several emails and conversations with Defendant, Plaintiff and Defendant entered into a written agreement. Plaintiff asked his California and Oregon friends to stay on the job, but they all refused to work with Defendant.

With respect to cash flow, Plaintiff had paid Defendant $256,000 under the Final Agreement and Defendant had not even finished the foundation and was months behind schedule. The Final Agreement called for a $100,000 material reserve and Plaintiff asked Defendant to refund $100,000 to bring the material reserve back into balance, which Defendant agreed to by issuing a check in the amount of $100,000 to Plaintiff leaving a total paid to Defendant of $156,000.

*Defendant's Statement of Facts*

This action arises from a partnership between Plaintiff, Mark Morrison, Esq., Defendant Uli Zangpo, and other individuals not sued herein to finance and develop real estate properties in Northern California. In December, 2005, Defendant Uli Zangpo and his wife, Jennifer Baker, owned real property in San Geronimo, Marin County, California ("Manzanita"). This real property and an adjacent lot would be split into a number of parcels, with Plaintiff, Defendant and other involved parties retaining lots, and some property left over as a "Common" area. Plaintiff and another partner in the deal, Jim Sciaroni, agreed to contribute capital, and legal, business, real estate, and management skills. Plaintiff acted as the attorney for the Manzanita (and Prospect) projects. Plaintiff acknowledged his attorney-client duties and some of the inherent conflicts of interest (for Manzanita, but not for Prospect) in a rule 3-300 disclosure, but the disclosure did not list and explain all the conflicts of interest, and produced a transaction that was not fair and reasonable. Plaintiff did not furnish a rule 3-300 disclosure for the Prospect project, and that transaction was not fair and reasonable, making it void or voidable.

In exchange for Plaintiff's capital contribution, Defendant was to provide a Note and Deed of Trust. Plaintiff never met his full capital commitments, but took a note and deed of trust worded as if he had met his full capital commitment. Rather than immediately fund the project, Plaintiff constructed a number of sub-transactions. Plaintiff drafted the legal agreements for Manzanita and chose to structure his capital contribution as a secured loan, later constructing a series of sub-transactions to the project. As the Manzanita deal progressed, Plaintiff informed Defendant that he could only complete funding Manzanita if he first completed a stalled project known as Prospect, the project that is the subject of the complaint herein.

Plaintiff asked Defendant to manage Prospect so that Plaintiff could meet his financial commitments to Manzanita. Plaintiff still owed Defendant $125,000 under the Manzanita agreement. Defendant believed that he would only recover his funds if he agreed to manage the Prospect property. Defendant felt obligated to help his friend, fiduciary, attorney, and partner (Plaintiff) in his

efforts to complete funding the money Plaintiff owed Defendant, but apparently could not pay. Plaintiff insisted, indicating that he could not meet his financial obligation in the Manzanita Agreements until the Prospect property was developed. Defendant trusted and relied on Plaintiff as his attorney and personal friend, and as someone he saw as his partner in the Manzanita project.

Defendant began coordinating the Prospect property, helping Plaintiff oversee the general contractor working on the job. This general contractor was replaced by Plaintiff, and defendant continued to assist. Plaintiff and Plaintiff's second licensed general contractor had some differences, and the general contractor left the job. Defendant continued to rely on Plaintiff as his attorney and friend, and basically did whatever Plaintiff told him to do, and signed whatever Plaintiff told him to sign, in reliance on the close friendship and confidential attorney client relationship he had with Plaintiff.

At no point in the business dealings on Prospect did Plaintiff furnish a Rule 3-300 disclosure, and the terms and conditions of the documents, agreements, and loans were not fair and reasonable, so that all the dealings that occurred were tainted with Plaintiff's conflicts of interest and improper dealings with Defendant, to whom he owed fiduciary duties. Plaintiff apparently knew that the documents he was drafting would or might change Defendant's employment from a partner to a purported unlicensed independent contractor. Plaintiff failed to disclose this to Defendant, and also failed to disclose that he intended to do exactly what he did—not pay what he promised to pay and purport to claim cancellation after the fact without proper compensation for eight months work by Defendant.

Plaintiff announced to Defendant that he urgently needed more money, for a short term emergency. Defendant complied and made a short term loan to Plaintiff of $100,000. Plaintiff never repaid this loan, but instead fired Defendant several days after Defendant made the "loan" to Plaintiff. Plaintiff filed this suit against Defendant alleging that Plaintiff was entitled to recover against Defendant for acting as an 'unlicensed contractor' on Prospect. Defendant refutes this statement as he was hired by Plaintiff not as a 'contractor,' but as a manager—to work with and coordinate the workers and contractors that Plaintiff had hired.

Defendant disputes numerous items in Plaintiff's statement of facts.

**Legal Issues**

*Plaintiff*

Was Defendant a licensed contractor in CA during the relevant contractual periods or ever? Was a valid contract formed? Did Plaintiff perform his duties under the Final Agreement by providing materials and money to Defendant in a timely manner? Was Plaintiff in breach of the Final Agreement? Did Defendant fulfill his obligations under the Final Agreement to make the Property available for marketing by May 1, 2007? Was Defendant in breach of the Final Agreement? Was Plaintiff harmed by Defendant's breach? Were the following damages foreseeable: liquidated damages; additional financial carrying costs; additional building costs; and management costs? What were Plaintiff's reasonable costs in completing the work? Did Plaintiff take reasonable efforts and make reasonable expenditures to mitigate damages?

*Defendant*

Defendant contends that he was hired as a project manager – to work with and coordinate the workers and licensed general contractors (who subsequently refused to work for Plaintiff) that Plaintiff had hired.

Defendant also contends that Plaintiff and Defendant have an attorney-client relationship and a partnership and other fiduciary duties with respect to the Manzanita and Prospect projects. Defendant contends that Plaintiff violated his attorney-client duties and other fiduciary duties to Defendant throughout this series of transactions. Can an attorney who has not made rule 3-300 disclosures to a party to whom he owes attorney client duties obtain that person's signature on a document that is not fair and reasonable and then avoid the obligations of the contract while accepting the benefits and claiming damages relating to the contract, without liability to the client? Was the relationship between Plaintiff and Defendant such as to entail fiduciary obligations of Plaintiff to Defendant?

Defendant further contends that Plaintiff was responsible for compliance with subdivision law on the Manzanita Agreement, but that Plaintiff never fulfilled these duties, and that it is possible that the Manzanita Agreement could not have complied with the Subdivision Map Act.

Additional legal issues may also arise after Defendant files his answer, counterclaim, and cross-claims, which should reflect Defendant's statement of facts from the previous section of this Case Management Statement. Did the first contract call for an illegal subdivision? Did Plaintiff breach his duties and fail to draft a contract that was fair and reasonable? Is the first contract valid and enforceable regarding Manzanita? Were the Prospect written documents valid contracts, or are they void or voidable for failure to comply with Rule 3-300; for not being fair and reasonable as required by rule 3-300; Did Plaintiffs knowledge of contractor's license laws and confidential conversations with Defendant make the documents that Plaintiff drafted and now calls contracts void, voidable, or fraudulent? Because of alleged breaches of fiduciary duty by Plaintiff, is plaintiff estopped from raising contractor's license issues, and is Plaintiff liable to defendant for fraud related to the contract? Did Plaintiff's taking property without permission on visits to Defendants shop in San Rafael and to Defendant's property in Forest Knolls made after Defendant loaned Plaintiff $100,000 constitute conversion? Are punitive damages appropriate for this conduct? If Plaintiff borrowed $ 100,000 in a short loan from Defendant without any intention to pay it back, did this constitute fraud?

The complex factual pattern of this case and the two related series of transaction and events are such that all the legal issues involved cannot yet be identified, but some of them are outlined above.

**Motions**

*Plaintiff*

Plaintiff's Motion for Partial Summary Judgment on Count One.

*Defendant*

Defendant filed a Motion to Dismiss for lack of jurisdiction, which is set to be heard concurrently with the Case Management Conference. Defendant also filed a motion to stay these proceedings and discovery pending mandatory arbitration. This motion was granted in part: the parties have been

ordered to complete their initial disclosures, after which the case will be ordered to arbitration or dismissed. Defendant also filed a motion to extend the date of this Case Management Conference, which was granted in part. It is not yet clear whether the Court expects Defendant to add parties by cross complaint, and to file formal pleadings for counter claims, or if this aspect will be delegated to the arbitrator, as contemplated in the arbitration agreement. Plaintiff filed supplemental documents after his date to oppose the motion to dismiss had passed and after his opposition had been filed.

It is not yet possible to predict the motions that will need filing with this Court, until the form of order on the referral to arbitration is settled and determined. Despite Plaintiff's filed Statement of Non-Opposition which stated that arbitration extends to both the Manzanita and Prospect agreements, Plaintiff seemed to claim at the ADR telephone conference that the arbitration would be limited to only some of the disputes between the parties.

There may well be additional motions with regard to the pending arbitration proceedings, but these will most likely be filed with the arbitrator. This aspect remains to be determined.

**Amendment of Pleadings**

*Plaintiff*

Plaintiff does not anticipate amending the complaint at this time, but would like to set a deadline of December 31, 2008 for amending the complaint.

*Defendant*

If this case is not dismissed, Defendant will file an Answer, Counterclaims, and Cross-claims, adding additional claims and defenses. Defendant anticipates filing within 20 days of the receipt of an Order of the Court denying Defendant's motion to dismiss.

**Evidence Preservation**

*Plaintiff*

Plaintiff is not concerned about evidence preservation as he feels he has all necessary evidence to proceed.

*Defendant*

Defendant has saved e-mails between himself and Plaintiff. He expects that Plaintiff will do the same, and also expects that Plaintiff will save all relevant third party e-mails regarding the properties at issue.

**Disclosures**

*Plaintiff*

First, this Court ordered parties to comply with Fed. R. Civ. P. 26(f) and Plaintiff will act accordingly. Second, there is no arbitration agreement in the signed construction Property agreement upon which this complaint is based. Defendant's counsel, Neil Bloomfield, either does not understand the facts or is misleading this Court when he makes any references to an arbitration agreement.

*Defendant*

There is a conflict between the arbitration agreement of the parties, contained in the Manzanita Agreement, which states, "the parties shall not be permitted any written discovery or depositions of any kind," and the Federal Rules of Civil Procedure 26, requiring the parties to exchange discoverable information    In his Statement of Non-Opposition to Defendant's Motion to Stay and for Binding Arbitraiton, Plaintiff stipulated that the Prospect Agreement relates to, or arises our of the Manzanita Agreement, and is therefore subject to the Dispute Resolution provisions of the Manzanita Agreement. The Court has ordered the parties to proceed with these initial disclosures provided by the Federal Rules despite the parties' arbitration agreement. The disclosures are being exchanged concurrently with the filing of this Case Management Statement. Plaintiff has now requested leave to have a motion for summary judgment, which will require discovery, and has now contended that relating to Prospect there is no binding arbitration agreement, which means there would be no barrier to discovery. The course of disclosure and discovery is at an early stage, and the parties will need guidance from the Court on these issues.

Defendant believes that Plaintiff has signed copies of all agreements between the parties, and that, at a minimum, Plaintiff should produce copies of all these agreements to Defendant. These agreements could be relevant to determine the extent, scope and guidelines for mediation and arbitration between the parties, and any binding arbitration between the parties should not proceed until Defendant has received copies of these agreements. If there is no binding arbitration agreement related to Prospect, and if Plaintiff does not agree that two agreements are linked contrary to statements in Plaintiffs non opposition, then there will need to be discovery and the arbitration referral should be non binding.

**Discovery**

The Court has ordered all discovery other than the initial disclosures stayed pending the hearing on Defendant's Motion to Dismiss. If not dismissed, the case may proceed to arbitration under an agreement between the parties that prohibits discovery of any kind. However, Plaintiff contends that agreement is not applicable to this proceeding, and thus there may need to be discovery on Prospect transaction issues before any alternate dispute resolution or arbitration. At a minimum, all parties should have access to the agreements between the parties prior to proceeding to arbitration. It is possible more discovery will be needed.

**Class Actions**

Not Applicable

**Related Cases**

None

**Relief**

*Plaintiff*

1. Plaintiff seeks monetary damages as follows:

    a. $193,249 --- Based on the allegation that Defendant was not and never has been a licensed contractor in the State of California and that Plaintiff paid Defendant directly $154,478 and at his direction $38,771. California Business & Professional Code §7031(b);

    b. $118,600 --- Based on the allegation that the contract contained a liquidated damages clause in the event Defendant failed to make defined progress on the project by specific "landmark dates;"

    c. $43,160 --- Based on the allegation that additional financial carrying costs are foreseeable or that Defendant knew or should have known about these damages suffered by Plaintiff due to Defendant's breach;

    d. $317,539 --- Based on the allegation that current California law entitles Plaintiff to recover the difference between reasonable costs to Plaintiff of completing work less the contractually agreed upon cost. Plaintiff spent $692,539 completing the house and the contractually agreed upon cost of $375,000 leaving a difference of $317,539.

    e. $48,000 --- Based on the allegation that management costs are foreseeable or that Defendant knew or should have known about these damages suffered by Plaintiff (Plaintiff personally managed the building) due to Defendant's breach.

*Defendant*

Defendant has not yet filed pleadings towards the relief he seeks, because the case is not yet at that point. It is not yet clear whether those items will be filed with the arbitrator or with the Court. Defendant will likely be seeking the cancellation of various instruments due to fraud, and presumably the arbitrator will have the power and authority to determine the appropriateness of such relief. *It is possible that unless it is stipulated that the arbitrator has such powers certain issues may have to be reserved by the Court for later or earlier determination.* At this time, Plaintiff estimates his damages as follows:

    A. $84,000 plus interest unpaid pursuant to the Manzanita agreement;

  B.  $100,000 loan never reapaid, plus interest;

  C.  Value of items taken by Plaintiff from Defendant from 320 DuBois and from 25 Morales, and not paid by Plaintiff, estimated at $90,000;

  D.  Unpaid lumber bill, approximately $7,000;

  E.  Delay damages due to defective work on Manzanita contract, estimated at $200,000;

  F.  Punitive damages for breach of fiduciary duty, and for converstion for items in # c above, estimated at $200,000;

plus appropriate costs and attorneys' fees.

**Settlement and ADR**

  Plaintiff and Defendant have held an ADR teleconference with the Court on July 14, 2008. The parties are working on mediation through JAMS, if they can agree on how to share the costs of the mediation. The parties plan to select six potential mediators (three by each party) by the end of July, and to have the mediation completed in August, 2008 if they can agree on a method of sharing the costs of mediation. Defendant believes that if the mediation is unsuccessful, the parties could benefit from an early settlement conference.

**Consent to Magistrate Judge For All Purposes**

  The parties have consented to a Magistrate Judge for all proceedings to date.

**Other Reference**

  Special Magistrate or Multi-District Litigation is not applicable in this case.

**Narrowing of Issues**

  The full scope of the parties dispute is not yet at a mature pleading stage. Once it is the parties can work to narrow some of the issues.

**Expedited Schedule**

This case may be dismissed or proceed to mediation and arbitration as such this section may not be applicable. Arbitration referral may be stayed pending filing of cross complaints and counter claims, or these matters may be referred to the arbitrator under the parties' agreement. An Early Settlement Conference could be productive.

**Scheduling**

This case will be dismissed or proceed to mediation and arbitration as such this section is not applicable, except as mentioned above.

**Trial**

This case will be dismissed or proceed to mediation and arbitration as such this section is not applicable.

**Disclosure of Non-party Interested Entities or Persons:**

Plaintiff filed Certification of Interested Entities or Persons required by Civil Local Rule 3-16 as follows: "Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report." Defendant will file Defendant's certification concurrently with this Case Management Statement

**Other Matters**

None.

Respectfully Submitted:

Law Offices of Neil Jon Bloomfield

By___/s/_Neil Jon Bloomfield___   Dated: July 16, 2008

    Attorneys for Defendant Uli Zangpo

Law Offices of Mark Morrison

Law Offices of Matt Kurlich

By_/s/Mark Morrison_____   Dated:   July 16, 2008

Attorneys for Plaintiff Mark Morrison