**United States District Court**
For the Northern District of California

1
2
3
4
5                        UNITED STATES DISTRICT COURT
6                        NORTHERN DISTRICT OF CALIFORNIA
7
8    MARK MORRISON,                              No. C-08-1945 EMC
9            Plaintiff,                          **ORDER DENYING PLAINTIFF'S**
                                                 **MOTION FOR RELIEF FROM**
10       v.                                      **STIPULATION**
11   ULI ZANGPO,                                 **(Docket No. 40)**
12           Defendant.
     _____/
13
14
15          Plaintiff Mark Morrison has filed suit against Defendant Uli Zangpo for, *inter alia*, breach of
16   contract and other state law claims.  Currently pending before the Court is Mr. Morrison's motion
17   for relief from a stipulation for arbitration.  In the motion, Mr. Morrison essentially asks that he be
18   allowed to withdraw his statement of nonopposition to binding arbitration.  Having considered the
19   parties' briefs and accompanying submissions, as well as the oral argument of counsel and all other
20   evidence of record, the Court hereby **DENIES** Mr. Morrison's motion.
21                   **I.    FACTUAL & PROCEDURAL BACKGROUND**
22          The claims asserted by Mr. Morrison in his complaint all concern the work that Mr. Zangpo
23   performed on real property owned by Mr. Morrison.  The work was governed by a contract between
24   the parties entered into on June 21, 2006, *see* Compl., Ex. B [hereinafter Original Prospect
25   Agreement], and subsequently revised on December 5, 2006.  *See* Compl., Ex. F [hereinafter
26   Revised Prospect Agreement].  This contract shall hereinafter be referred to as the Prospect
27   Agreement.  Neither the Original nor the Revised Prospect Agreement contained an arbitration
28   clause.

**United States District Court**
For the Northern District of California

1    Prior to the Prospect Agreement, Mr. Morrison and Mr. Zangpo -- as well as two others,

2  Jennifer Baker (Mr. Zangpo's wife) and Jim Sciaroni -- entered into an agreement with respect to a

3  different piece of real property. *See* Docket No. 12 (Bloomfield Decl., Ex. A) [hereinafter

4  Manzanita Agreement]. This agreement shall hereinafter be referred to as the Manzanita

5  Agreement. The Manzanita Agreement reflected that Mr. Zangpo and his wife owned and/or were

6  in control of certain real property and that it was "[t]he intention of the Parties . . . to work together

7  in creating four legal buildable parcels of real property so that [Mr. Zangpo and his wife, Mr.

8  Sciaroni, Mr. Morrison, and Steven Finkbine] each have one parcel to build a single family

9  residential home" and "to work together to create useable community space" for common areas.

10  Manzanita Agreement ¶ 1. Unlike the Prospect Agreement, the Manzanita Agreement did contain

11  an arbitration clause, which provided as follows: "Any dispute or proceeding concerning this

12  Agreement, or any and all claims *arising out of or in connection with* this Agreement will be

13  resolved by binding arbitration to be held in Marin County, California." Manzanita Agreement ¶ 27

14  (emphasis added).

15    After Mr. Morrison initiated this lawsuit concerning the Prospect Agreement, Mr. Zangpo

16  filed a motion to stay proceedings pending mandatory binding arbitration. *See* Docket No. 11. In

17  the motion, Mr. Zangpo argued that mandatory binding arbitration was required because, even

18  though the Prospect Agreement did not contain an arbitration clause, the Manzanita Agreement did,

19  and the Prospect Agreement was "actually an addendum" to the Manzanita Agreement. Docket No.

20  11 (Mot. at 2).

21    In response to the motion to stay, Mr. Morrison filed a statement of nonopposition. *See*

22  Docket No. 20. In the statement, Mr. Morrison disputed that the Prospect Agreement was an

23  addendum to the Manzanita Agreement, but he specifically agreed that "the dispute over the

24  Prospect contract relates to, or arises from, the Manzanita property, and that any potential dispute

25  regarding either property or contract should be decided by binding arbitration." Docket No. 20

26  (Opp'n at 2).

27    The Court therefore issued an order stating that it would order mandatory arbitration so long

28  as Mr. Zangpo's motion to dismiss for lack of subject matter jurisdiction was denied. *See* Docket

United States District Court

For the Northern District of California

1    No. 27 (Order at 2).  Subsequently, the Court denied the motion to dismiss, and, at a case

2    management conference held thereafter, the Court discussed with the parties the issue of mandatory

3    arbitration.  The Court was concerned that, in spite of the parties' previous agreement to mandatory

4    arbitration, it now appeared -- based on the parties' joint case management conference statement --

5    that there was a dispute regarding such.  Mr. Morrison confirmed that there was a dispute and

6    eventually stated that he no longer agreed to arbitration.  The Court therefore gave Mr. Morrison an

7    opportunity to file a motion to reconsider with respect to its order in which it had conditionally

8    ordered mandatory arbitration.  *See* Docket No. 34 (Order at 5) (citing Civil Local Rule 7-9, which

9    governs motions to reconsider).  The Court noted: "If [Mr. Morrison] files such a motion, [he] must,

10   of necessity, establish that he is entitled to withdraw his statement [of] nonopposition . . . .  He would

11   also have to prevail on the merits and demonstrate that the instant dispute is not subject to the

12   arbitration clause in the Manzanita agreement."  Docket No. 34 (Order at 5).

          Mr. Morrison thereafter filed the currently pending motion.

13

14                                   **II.    DISCUSSION**

15   A.    Civil Local Rule 7-9

16         As a preliminary matter, the Court must address Mr. Zangpo's contention that the motion

17   should be denied in its entirety based on Mr. Morrison's failure to comply with Civil Local Rule 7-9.

18   The Court shall not deny the motion on this basis.  Civil Local Rule 7-9 requires that a party moving

19   for reconsideration must first seek leave to file a motion to reconsider.  *See* Civ. L.R. 7-9(a).  To

20   obtain leave to file a motion to reconsider, a party must make a specific showing -- *e.g.*, that there

21   are new material facts or a change of law occurring after the time of the order at issue.  *See* Civ. L.R.

22   7-9(b).  In the instant case, the Court already gave leave to Mr. Morrison to file a motion to

23   reconsider.  *See* Docket No. 34 (Order at 5).  Thus, arguably, Mr. Morrison did not have to meet the

24   specific showing as detailed in Civil Local Rule 7-9(b).  The Court therefore turns to the merits of

25   Mr. Morrison's motion.

26   B.    Relief from Stipulation

27         The issue for the Court to consider is whether Mr. Morrison should be allowed to withdraw

28   his statement of nonopposition to binding arbitration.  Mr. Morrison argues that his statement of

United States District Court
For the Northern District of California

1   nonopposition was essentially a stipulation to binding arbitration, that relief from a stipulation is

2   possible under certain circumstances, and that he is entitled to such relief because his stipulation was

3   the result of "mistake, excusable neglect or improvidence."  Mot. at 11.  He later elaborates:

> Plaintiff's non-opposition was a *mistaken legal tactic* to include and
> finalize any and all legal relationships with Defendant.  Plaintiff
> wanted to assure the Court of his intention to arbitrate all Prospect
> Agreement issues.  It was a mistake, excusable neglect and
> improvident for Plaintiff to make this statement as his basis for
> stipulating to binding arbitration.  His belief at the time was that the
> case could be efficiently, effectively and fairly adjudicated by
> stipulating to binding arbitration.
>
> Due to Plaintiff's misunderstanding, he believed that the Court
> would order binding arbitration per its own rules.  Plaintiff would not
> have filed the non-opposition had he known he would be exposed to
> Defendant's attorney's fees, limited to JAMS in choosing an arbitrator
> or unable to conduct discovery in this case.

12   Mot. at 11-12 (emphasis added).

13       Some courts have held that relief from a stipulation may be given where a party enters a

14   stipulation due to mistake, inadvertence, or excusable neglect, *see, e.g.*, *Action Alliance of Senior*

15   *Citizens of Greater Philadelphia v. Elan Corp. PLC*, No. 02-CV-2095, 2003 U.S. Dist. LEXIS

16   18089, at *4 (E.D. Pa. Sept. 5, 2003) ("'A court may allow a party to withdraw from a stipulation if

17   the moving party can prove that he relied to his detriment on representations that were untrue, or that

18   the stipulation stemmed from fraud, accident, mistake, inadvertence, surprise, or excusable neglect,

19   or that some other reason justifies relief.'"), but the Ninth Circuit does not appear to have held such -

20   - at least, no Ninth Circuit authority is cited by Mr. Morrison.

21       Even if the Ninth Circuit were to adopt that position, the mistake committed by Mr. Morrison

22   is not a sufficient basis for relief.  Although the case law does not provide much guidance as to what

23   kind of a mistake is typically recognized, courts have analogized a stipulation to a contract, *see*

24   *Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, Nos. 73 Civ. 3058 (WCC), 73

25   Civ. 4278 (WCC), 2005 U.S. Dist. LEXIS 37538, at *21 (S.D.N.Y. July 13, 2005) ("A stipulation

26   and order is a binding agreement between parties to a dispute that is enforceable as a contract. . . .

27   [R]elief from a stipulation will be granted only upon a showing of good cause sufficient to invalidate

28   a contract, such as fraud, overreaching, duress or mistake.") (internal quotation marks omitted), and,

4

**United States District Court**
For the Northern District of California

1  under California law, a unilateral mistake of fact is not a basis to rescind a contract unless the other

2  party had reason to know of the mistake or caused the mistake or unless the effect of the mistake is

3  such that enforcement of the contract would be unconscionable. *See Donovan v. RRL Corp.*, 26 Cal.

4  4th 261, 280-82 (2001). Here, there is no evidence that Mr. Zangpo had reason to know of or caused

5  Mr. Morrison's mistake, and it would be hard to characterize enforcement of the stipulation

6  unconscionable when Mr. Morrison -- an attorney himself and represented by counsel in this action

7  -- should have known about the attorney fee provision and the JAMS provision since they were

8  specifically provided for in the Manzanita Agreement in the section on dispute resolution. *See*

9  Manzanita Agreement ¶ 27. Moreover, it appears undisputed that Mr. Morrison was actually the

10  drafter of the Manzanita Agreement, and therefore he knew of its provisions.

11        Even if Mr. Morrison would not be entitled to relief from the stipulation based on his

12  mistake, under Ninth Circuit law, a stipulation may still be withdrawn to prevent a manifest

13  injustice. *See Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir. 1985) (stating that the trial court

14  could not permit the defendant to withdraw the stipulation unless the defendant presented evidence

15  to the court showing that withdrawal of the stipulation was necessary to prevent manifest injustice).

16        [A] district court may disregard a stipulation if to accept it would be
   "manifestly unjust or if the evidence contrary to the stipulation [is]
17  substantial. In determining what constitutes manifest injustice, courts
   may consider (1) the effect of the stipulation on the party seeking to
18  withdraw the stipulation; (2) the effect on the other parties to the
   litigation; (3) the occurrence of intervening events since the parties
19  agreed to the stipulation; and (4) whether the evidence contrary to the
   [stipulation] is substantial.

20

21  *State Farm Fire & Cas. v. McDevitt*, No. C-00-2240 EDL, 2001 U.S. Dist. LEXIS 7529, at *22

22  (N.D. Cal. May 21, 2001).

23        In the instant case, the effect on Mr. Morrison of the stipulation would be to deny him of

24  venue in this court and his right to a jury trial therein. However, that right is waivable and the

25  arbitration process established in the Manzanita Agreement is well established. There is no

26  indication that the arbitration process would not be fair. Mr. Zangpo, on the other hand, would

27  obtain the benefit of the bargain which affords him arbitration, which typically is intended as a

28  speedier and cost effective process. As noted above, there have been no interviewing events since

United States District Court

For the Northern District of California

1    the stipulation other than Mr. Morrison's realization that he may have made a tactical error.  Given

2    Mr. Morrison is an attorney and is the one who drafted both the Prospect and Manzanita Agreement,

3    such a belated realization does not render enforcement of the stipulation a manifest injustice.  Thus,

4    Mr. Morrison fails to establish sufficient grounds for relief from the stipulation.

5          Even if grounds for withdrawal had been established, the Court further finds Mr. Morrison's

6    position on arbitrability without merit.

7    C.    Arbitrability

8          As a preliminary matter, the Court must determine what arbitration law it should look to in

9    deciding whether the dispute regarding the Prospect Agreement is covered by the arbitration clause

10   in the Manzanita Agreement.

11         In his motion to stay proceedings pending mandatory binding arbitration, Mr. Zangpo argued

12   that the governing arbitration law is the Federal Arbitration Act ("FAA").  The FAA states that

13         [a] written provision in any maritime transaction or a contract
           evidencing a transaction involving commerce to settle by arbitration a
14         controversy thereafter arising out of such contract or transaction . . .
           shall be valid, irrevocable, and enforceable, save upon such grounds as
15         exist at law or in equity for the revocation of any contract.

16   9 U.S.C. § 2.  The instant case clearly does not involve a maritime transaction.  Thus, the only

17   question remaining is whether the Manzanita Agreement was a "contract evidencing a transaction

18   involving commerce."  Significantly, courts have interpreted "commerce" to mean *interstate*

19   commerce.  *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 877 n.3 (9th Cir. 2007).  There is little to

20   no evidence indicating that the Manzanita Agreement itself would involve interstate commerce or

21   that, in the aggregate, the economic activity at issue with the Manzanita Agreement represents a

22   general practice subject to federal control.  *Compare Del E. Webb Constr. v. Richardson Hosp.*

23   *Auth.*, 823 F.2d 145, 147 (5th Cir. 1987) (concluding that FAA was applicable to owner-contractor

24   agreement to supervise expansion and renovation of medical center, where contract involved persons

25   from different states, employees of contractor traveled interstate, interstate mails were used to

26   facilitate work of contractor's employees, and materials used in construction of medical center were

27   manufactured and moved in interstate commerce), *overruled on other grounds by Pedcor Mgmt. Co.*

28   *Welfare Ben. Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355 (5th Cir. 2003); *First Family Fin.*

1    *Servs. v. Fairley*, 173 F. Supp. 2d 565, 573 (S.D. Miss. 2001) (concluding that borrower's claim

2    against lender for violation of loan agreement had sufficient nexus to interstate commerce to permit

3    lender to enforce arbitration clause under FAA in federal court, where borrower was nonresident

4    corporation and financing transaction was required to comply with federal laws and regulations);

5    *American Gen. Fin. Servs. v. Griffin*, 327 F Supp 2d 678, 681 (N.D. Miss. 2004) (holding that

6    application of FAA was not defeated simply because individual transactions, taken alone, did not

7    have substantial effect on interstate commerce; noting that general practice in the aggregate,

8    commercial lending, effected interstate commerce).  Therefore, the Court does not agree with Mr.

9    Zangpo's contention that the FAA provides the governing arbitration law.

10          That leaves the Court with state arbitration law.  Under California law, "there is no policy

11   compelling persons to accept arbitration of controversies which they have not agreed to arbitrate."

12   *RN Soln., Inc. v. Catholic Healthcare West*, 165 Cal. App. 4th 1511, 1523 (2008).  Still, California

13   "law favors contracts for arbitration of disputes between parties," *id.*, and so, not surprisingly, it is

14   the burden of the party opposing arbitration "to show that the arbitration clause cannot be interpreted

15   to cover the claims [at issue]."  *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1321

16   (2007).  In fact, because of California's "strong public policy in favor of arbitration," if there is "any

17   doubt" as to whether a plaintiff's claims come within an arbitration clause, that doubt must be

18   resolved in favor of arbitration.  *Id.* at 1320-21.  That is, the general rule is that arbitration will be

19   ordered "unless it can be shown with assurance that the arbitration clause is not susceptible of an

20   interpretation that covers the asserted dispute."  *Pacific Invest. Co. v. Townsend*, 58 Cal. App. 3d 1,

21   9 (1976).

22          "In determining the scope of an arbitration clause, [t]he court should attempt to give effect to

23   the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the

24   circumstances under which the agreement was made."  *RN Soln.*, 165 Cal. App. 4th at 1523 (internal

25   quotation marks omitted).  Notably, the phrase "all disputes arising in connection with this

26

27

28

**United States District Court**

For the Northern District of California

1   agreement" -- a phrase essentially the same as that used in the Manzanita Agreement[1] -- "has been

2   construed to include 'every dispute between the parties having a significant relationship to the

3   contract and all disputes having their origin or genesis in the contract.'" *Id.* at 1522-23 (citing

4   *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-25 (9th Cir. 1999)).  The Court finds the dispute

5   regarding the Prospect Agreement has a significant relationship to the Manzanita Agreement.

6           In so finding, the Court acknowledges that the two agreements were not executed at the same

7   time and that breach of the Manzanita Agreement would not necessarily lead to breach of the

8   Prospect Agreement.  Also, the Prospect and Manzanita Agreements had different purposes, and the

9   Prospect Agreement did not explicitly incorporate the Manzanita Agreement.  *See Marsch v.*

10  *Williams*, 23 Cal. App. 4th 250, 256 (1994) (rejecting defendant's argument that arbitration clause in

11  one contract between the parties could be imposed on a different contractual relationship because,

12  *inter alia*, the two agreements "were not closely connected in purpose, did not incorporate one

13  another's terms, were not executed at the same time, and the breach of [one] agreement did not

14  necessarily lead to the breach of the [other] agreement").

15          However, these facts are outweighed by others.  First, there is evidence that Mr. Zangpo

16  agreed to enter into the Prospect Agreement in order to enable Mr. Morrison to fund the Manzanita

17  Agreement (*i.e.*, Mr. Morrison would fund once construction on the Prospect property was

18  completed and the property sold).  Second, there is evidence that the Prospect Agreement was a

19  means to compensate Mr. Zangpo for the injury he suffered as a result of Mr. Morrison's delayed

20  funding of the Manzanita Agreement.  *See* Zangpo Decl. ¶ 5(d) (claiming that, at numerous

21  Manzanita partnership meetings, "[i]t was stated . . . repeatedly that the reason for my involvement

22  in Prospect was to help Mark meet his delayed funding commitment to Manzanita . . . and in part

23  later to offset the loss to me caused by that delay in Mark's meeting his financial commitment to me

24  and to the Manzanita partnership"); *see also* Finkbine Decl. ¶ 3(d) (agreeing that "[t]he desirability

25  of Zangpo having a primary role on the Prospect job was discussed in formal Manzanita meetings").

---

26

27          [1] As noted above, the Manzanita Agreement's arbitration agreement states as follows: "Any
    dispute or proceeding concerning this Agreement, or any and all claims *arising out of or in connection*

28  *with* this Agreement will be resolved by binding arbitration to be held in Marin County, California."
    Manzanita Agreement ¶ 27 (emphasis added).

United States District Court

For the Northern District of California

1    Finally, and most importantly, even though the Prospect Agreement did not explicitly incorporate

2    the Manzanita Agreement's terms, the terms of the Manzanita Agreement was clearly referenced in

3    the Prospect Agreement -- *i.e.*, the $125,000 loan by Mr. Morrison required under the Manzanita

4    Agreement would be offset in part if Mr. Zangpo did not perform the Prospect Agreement on time.

5    Indeed, this provision in the Prospect Agreement reflected that the Prospect and Manzanita

6    Agreements were tied to one another and therefore were not entirely "separate commercial risks."

7    *Marsch*, 23 Cal. App. 4th at 256 (stating that two contracts involved "involve[d] separate enterprises

8    and most importantly separate commercial risks").

9         Furthermore, there are related factual and legal issues with respect to the dispute involving

10   the Prospect Agrement and the dispute involving the Manzanita Agreement.  For example, in both

11   disputes, whether Mr. Morrison had an attorney-client relationship with Mr. Zangpo and thus owed

12   Mr. Zangpo certian duties is an issue.[2]  Also, the terms of the Prospect Agreement, as discussed

13   above, create an overlap between the two disputes -- *i.e.*, under the Prospect Agreement, Mr.

14   Morrison would not have to pay part of the $125,000 loan he was supposed to make under the

15   Manzanita Agreement if Mr. Zangpo did not perform the Prospect Agreement on time.

16        Finally, the arbitration clause in the Manzanita Agreement extends not only to disputes

17   "arising out of" the agreement, but also to those "in connection with" the agreement.  The

18   disjunctive between these two clauses implies the parties intended to have the scope of arbitrability

19   sweep broadly to cover disputes which have any relationship to the Manzanita Agreement.  It is

20   hardly surprising that Mr. Morrison initially agreed that the dispute over the Prospect Agreement fell

21   within the reach of the arbitration clause of the Manzanita Agreement.

22        The courts have held that "any doubt" as to whether a plaintiff's claims come within an

23   arbitration clause must be resolved in favor of arbitration.  *EFund*, 150 Cal. App. 4th at 1320-21.

24   The Court concludes, in light of the above discussion, that arbitration of the instant case is required

25   per the terms of the Manzanita Agreement.  The Court therefore orders that the case be referred to

26   arbitration consistent with the terms of the Manzanita Agreement.  In addition, as requested by the

27   _____

28        [2] At the hearing, Mr. Morrison admitted that this was an issue relevant to both disputes.

1   parties (at least prior to Mr. Morrison's change of heart regarding arbitration), the Court orders that

2   these proceedings and discovery be stayed pending the outcome of arbitration.

3       The Court, however, shall stay the enforcement of this order pending completion of ADR in

4   order to give the parties an opportunity to resolve their disputes through the Court's alternative

5   dispute resolution program.  The Court has already referred this matter to Magistrate Judge

6   Zimmerman for a settlement conference to be conducted within 90 days.  Upon completion of the

7   settlement conference, the parties shall report back to this Court whether settlement has been

8   reached.

9                                   **III.   CONCLUSION**

10      For the foregoing reasons, Mr. Morrison's motion is denied and the case is referred to

11  arbitration.  Enforcement of this order, however, is stayed pending ADR.

12      This order disposes of Docket No. 40.

13

14      IT IS SO ORDERED.

15

16  Dated:  September 30, 2008

17                                          _____

18                                          EDWARD M. CHEN
                                            United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

10